TIPPETTS-ABBETT-MCCARTHY-STRATTON, Respondent, v. NEW YORK STATE THRUWAY AUTHORITY, Appellant. (Claim No. 34769.)

Third Department, May 7, 1963.

*Louis J. Lefkowitz, Attorney-General (George H. Rothlauf* and *Paxton Blair* of counsel), for appellant.

*Sylvester & Harris (Alvin McKinley Sylvester* and *Charles L. Sylvester* of counsel), for claimant-respondent.

*Bleakley, Platt, Hart & Fritz* and *Edward J. Wren (John C. Marbach* and *Frederick J. Martin* of counsel), for Chas. H. Sells, Inc., *amicus curiæ.*

BERGAN, P. J. Claimant entered into a contract with the Thruway Authority to provide engineering services, including detailed supervision, related to the performance of a construction contract. The date of completion expressed in the prime contract was June 1, 1955. With the approval of the Thruway Authority the completion date was extended several times, ultimately until September 1, 1956.

Claimant contends that these extensions constituted a breach by the Thruway of its engineering contract and has had judgment in the Court of Claims. We take a different view and hold that the Authority did not breach the claimant's engineering contract by extending the time of the prime contractor's performance.

We look first to the direct contractual obligation between claimant and the Authority. Although the agreement between claimant and Authority stated that it should be deemed to include " the agreement " between the Authority and the prime contractor, there was no stated date within which claimant was to perform the supervisory contract; and no agreement by which

the Authority undertook to assure claimant that the prime contractor would finish its work on June 1, 1955.

It is manifest that all the provisions of the "agreement" between the prime contractor and the Authority were not literally binding on claimant in relation to the Authority or Authority in relation to claimant. Claimant, for example, did not agree to build the road by June 1, 1955 or to build it at all; and it is clear that this obligation and the date of its performance were not expressly binding between the Authority and claimant.

The main basis of the claim is that the Thruway, which had means of punitive pressure on the prime contractor, was obligated to exert it so that the prime contract be completed within the stated time, rather than 15 months later, and that claimant was damaged by this failure.

Although there is no such express provision in the agreement between claimant and Authority, we assume that the Authority could not unreasonably delay the work to the claimant's damage. That is the basis of the Court of Claims decision; but on this issue claimant had the burden and the burden has not been met.

The Thruway had various means of punishing the prime contractor for failure to perform on time. It could have cancelled the contract, or refused to grant extensions which would have terminated payments and stopped the work. Claimant does not argue that it should have gone this far.

It could also, under the terms of the prime contract, have imposed on the contractor "engineering and inspection expenses incurred" by the Authority "where the work has been unduly delayed by the contractor because of unwarranted reasons, inefficient operation, or for any other reason for which the Authority determines the contractor liable."

Claimant seems to contend that this right to penalize the prime contractor amounted to a duty of the Authority owing to claimant to impose the penalties and to pay them to the claimant. No such obligation can be spelled out of the prime contract or by any incorporation of its relevant provisions by reference in the contract with claimant.

It was a power to penalize based on "unwarranted reasons" for delay or "inefficient operation"; and to recover for breach of an engineering contract because of a failure or refusal of the Authority to exercise this kind of power, claimant has the heavy burden of showing that no possible exercise of reasonable judgment or fair dealing with the prime contractor would have excused the Authority from imposing the penalty.

This burden has not only not been met, but the whole record shows that in large part the delay was reasonable. Even in

areas where the contractor may have been dilatory, the Authority was not required at the risk of liability to claimant to impose the penalties which claimant now argues should have been imposed. The record suggests that it was arguable whether, in sound judgment, penalties should have been imposed. And claimant is required to show more than a merely arguable reason for punitive action by the Authority if it is to recover for breach of its contract.

The claimant itself designed this part of the Thruway, laid out the work by which it was to be accomplished, and was cognizant of the engineering and construction difficulties involved. It estimated that 450 working days, or 18 working months would be required to do the work.

Delays were encountered at the outset in awarding the contract which are not attributable to the Authority. The contract which had been written for bidding about October 1, 1953, with a completion date of June 1, 1955, was not awarded until February 18, 1954, almost five months later. The completion date was not changed.

On April 18, 1954 claimant, which had estimated 18 months needed for the work, and, of course, knew then that the completion date remained June 1, 1955, accepted the supervision contract with the Authority to provide '' engineering and inspection services until the completion and final acceptance of the [prime] contract.''

With an intimate knowledge of the engineering problems involved in the road it designed, claimant could not possibly believe when it executed its supervision contract in April, 1954 that the prime contract could be completed in June, 1955. Delay was inevitable from the very beginning.

Further, on the critical question of the reasonableness of the Authority's extensions of time, at just about five months after the time fixed in the prime contract for completion, claimant, on October 28, 1955, wrote the Thruway its '' recommendations and comments '' on application by the prime contractor (its third application) '' for an Extension of Time ''.

Various reasons for the prime contractor's delay were enumerated by the claimant. The letter concluded with this: '' In view of the above, we feel that the extension of time requested is reasonable, and we recommend that it be approved.''

Yet claimant now argues that the extensions granted were so unreasonable that the Authority had no alternative but to impose the penalty permitted by its prime contract. In some part the time was extended by additional work for which claimant, whose fees were based on a fixed percentage of the prime contract

price, received additional compensation. Some part of the delay undoubtedly was due to the inherent difficulty of the terrain through which the road was laid. And while the prime contractor might, perhaps, have done the work faster had it put on more equipment and hired more men, whether the Authority was obliged to use drastic and punitive means to require this is an arguable question. This record does not justify a finding that claimant's contract was breached.

The decision in *Afgo Eng. Corp.* v. *State of New York* (244 App. Div. 395, affd. 268 N. Y. 716) upon which claimant heavily relies is not in point here. In some respects the case before us is similar to *McDonald Bros.* v. *Whitley County Ct.* (8 Ky. Law Rep. 874; 20 A. L. R. 1361). (Cf. *Osterling* v. *First Nat. Bank,* 262 Pa. 448.)

The judgment should be modified on the law and the facts by reversing that part in favor of claimant on the third cause of action, and as thus modified, affirmed, without costs.

GIBSON, HERLIHY, REYNOLDS and TAYLOR, JJ., concur.

Judgment modified on the law and the facts by reversing that part in favor of claimant on the third cause of action, and as thus modified, affirmed, without costs.